NOTICE: NOT FOR PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION DOES NOT CREATE
LEGAL PRECEDENT AND MAY NOT BE CITED EXCEPT AS AUTHORIZED.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

---

CHRISTA ALEXANDER, *Plaintiff/Appellee*,

*v.*

BILL LUKE CHRYSLER, JEEP & DODGE, INC., an Arizona corporation, *Defendant/Appellant.*

No. 1 CA-CV 13-0324
FILED 05-27-2014

---

Appeal from the Superior Court in Maricopa County
No.  CV2011-022023
The Honorable Douglas L. Rayes, Judge

**AFFIRMED**

---

COUNSEL

Weisberg & Meyers, LLC, Phoenix
By Russell Snow Thompson, IV
*Counsel for Plaintiff/Appellee*

Tacker & Associates, PLLC, Goodyear
By George A. Tacker
*Counsel for Defendant/Appellant*

---

**MEMORANDUM DECISION**

Judge Andrew W. Gould delivered the decision of the Court, in which Presiding Judge Lawrence F. Winthrop and Judge Maurice Portley joined.

---

**G O U L D**, Judge:

¶1        Bill Luke Chrysler, Jeep & Dodge, Inc. ("Bill Luke") appeals the superior court's summary judgment granted to Christa Alexander on its counterclaim for defamation.  For the following reasons, we affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

¶2        Alexander purchased a dealer-certified, used 2008 Chrysler Pacifica from Bill Luke in April 2011.  She informed the salesperson that she wanted a vehicle that had not been in an accident and requested a CarFax[1] report.  Despite her requests, Bill Luke did not give Alexander a CarFax report, but the salesperson assured her the Pacifica would not have received the dealership's certification if it had any issues or had been in an accident.

¶3        Several weeks after the purchase, Bill Luke finally provided the CarFax report to Alexander which indicated the Pacifica had been involved in a "T-bone" collision.  Bill Luke representatives told Alexander that the CarFax report must be incorrect because they had inspected the vehicle and it showed no signs of such damage.  Alexander distrusted the statements from Bill Luke and believed Bill Luke was aware of the damage prior to the sale and was deliberately evasive when she requested the CarFax report.

---

[1]        Carfax, Inc. is a commercial service that supplies vehicle history reports to individuals and businesses.  Such reports may include title information, flood damage history, total loss accident history, odometer readings, lemon history, number of owners, accident indicators, state emissions inspection results, service records, and commercial vehicle use. *See* http://www.carfax.com/about/car_history/hcabout.cfm (last visited May 8, 2014).

¶4 She filed the following complaint with the Better Business Bureau ("BBB"):

> I went to the dealership with specific requirements for my purchase. One of them was that the car had not been involved in any collisions. I requested the [C]arFax several times and each time was told the same thing "the car was 'certified' and could not receive that status if there had been any damage or issues." It was promised to me on several occasions. The last was when the salesman stated he would send it to me with his thank you letter. The thank you letter arrived but no [C]arFax. I went back to the dealership on 6/21 and spoke to a manager who finally gave me the [C]arFax. Not only had the car been in a collision but was T-boned and had major damage. The sales manager then proceeded to tell me the [C]arFax was wrong and the car had not been in that sort of accident. I would not have purchased this vehicle had they given me the information up front. I believe I was purposely misinformed in order for the sale to happen. I was told several times that because it was the end of the month I would get a better deal if I purchased the car at the time I was there. I also believe the initial salesman was aware of the damage and deliberately gave me the run around about the information I requested.

¶5 Thereafter, Bill Luke obtained the repair documents from the Pacifica's earlier collision, which indicated the CarFax report was incorrect and the Pacifica had suffered only minor damage to the left rear end.[2]

¶6 Alexander filed this action alleging Bill Like committed fraud in the sale of the Pacifica and sought to revoke her purchase. Bill Luke asserted a counterclaim for defamation arising out of Alexander's statements to the BBB.[3] The superior court granted Alexander summary

---

[2] Although the evidence Bill Luke cites as supporting this statement does not appear in the record, Alexander does not dispute these facts. Additionally, the record does contain documents evidencing the prior repairs.

[3] Bill Luke originally asserted counterclaims for both defamation and breach of contract. The superior court granted Alexander's motion to

judgment on the defamation claim, ruling Bill Luke had not proffered sufficient evidence to establish a prima facie case of defamation. The court also determined Alexander's statements were protected by a qualified privilege and Bill Luke had not offered any evidence that Alexander acted with actual malice. Bill Luke timely appealed, and we have jurisdiction pursuant to Arizona Revised Statutes ("A.R.S.") section 12-2101(A)(1) (2014).[4]

## DISCUSSION

**¶7**        We review the entry of summary judgment *de novo*, viewing the evidence and reasonable inferences therefrom in the light most favorable to the party opposing the motion. *Andrews v. Blake*, 205 Ariz. 236, 240, ¶ 12, 69 P.3d 7, 11 (2003). Summary judgment is only appropriate when "there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law." Ariz. R. Civ. P. 56(a); *see also Orme Sch. v. Reeves*, 166 Ariz. 301, 309, 802 P.2d 1000, 1008 (1990) (explaining that summary judgment is proper "if the facts produced in support of the claim . . . have so little probative value, given the quantum of evidence required, that reasonable people could not agree with the conclusion advanced by the proponent of the claim").

I.        **The Superior Court Correctly Determined that Alexander's Statements were not Defamatory as a Matter of Law**

**¶8**        Bill Luke argues it presented sufficient evidence to establish a prima facie case on its defamation claim by showing that Alexander's statements to the BBB were false and impugned its reputation. Alexander contends her statements were either substantially true or expressions of opinion and therefore are not actionable as defamation.

---

dismiss both claims pursuant to Arizona Rule of Civil Procedure 12(b)(6), but allowed Bill Luke leave to amend the defamation claim.

[4]        The superior court entered the signed order granting summary judgment "as a final appealable order." We construe this language as a direction for entry of judgment pursuant to Arizona Rule of Civil Procedure 54(b). *See Grand v. Nacchio*, 214 Ariz. 9, 16, ¶ 17, 147 P.3d 763, 770 (App. 2006) (holding that the superior court need not specifically mention Rule 54(b) if the language is clear that it intended to certify the judgment for appeal).

¶9        "To be defamatory, a publication must be false and must bring the defamed person into disrepute, contempt, or ridicule, or must impeach plaintiff's honesty, integrity, virtue, or reputation." *Godbehere v. Phx. Newspapers, Inc.*, 162 Ariz. 335, 341, 783 P.2d 781, 787 (1989). "Substantial truth is an absolute defense to a defamation action in Arizona . . . [and] [s]light inaccuracies will not prevent a statement from being true in substance, as long as the 'gist' or 'sting' of the publication is justified." *Read v. Phx. Newspapers, Inc.*, 169 Ariz. 353, 355, 819 P.2d 939, 941 (1991) (internal citations omitted). When, as in this case, the underlying facts are undisputed, the determination of substantial truth is a matter for the court. *Id.*

¶10        Only statements that may be reasonably interpreted as factual assertions, not simply statements of opinion or hyperbole, are actionable as defamation. *Burns v. Davis*, 196 Ariz. 155, 165, ¶ 39, 993 P.2d 1119, 1129 (App. 1999). To determine whether a false statement can be reasonably interpreted as a factual assertion, a court must consider the "context and all surrounding circumstances, including the impression created by the words used and the expression's general tenor." *Id.*

### A.        Statement One: "Not only had the car been in a collision but was T-boned and had major damage."

¶11        Bill Luke argues this statement was false because the Pacifica had only sustained minor damage in the prior accident. Alexander asserts the police report from the collision and records from the body shop that repaired the Pacifica show that her statement that the Pacifica had been T-boned and had major damage was either true or substantially true.

¶12        A T-bone accident is a right-angle or broadside collision, in which the side of one vehicle is impacted by the front or rear of another vehicle, forming a "T". The police report states the Pacifica was struck on the left rear side by a vehicle that hit it at a right angle. Accordingly, Alexander's statement that the Pacifica was "T-boned" is true and not defamatory. *Read*, 169 Ariz. at 355, 819 P.2d at 941; *Godbehere*, 162 Ariz. at 341, 783 P.2d at 787.

¶13        Alexander next argues her statement that the vehicle suffered major damage was substantially true and therefore, as a matter of

law, not defamatory.[5]   Bill Luke maintains the statement was demonstrably false, as the auto body repair shop records show that the prior repairs to the Pacifica consisted of a wheel replacement and alignment, buffing of the rear bumper cover and touch-up painting, and cost only $872.76.[6]

**¶14**      The statement was substantially true.  Alexander explained in her BBB statement that she told Bill Luke she required a vehicle that had no prior accidents, but after she bought the Pacifica she learned it had a prior accident.   Reading Alexander's statement in context and considering all of the surrounding circumstances, *see Burns*, 196 Ariz. at 165, ¶ 39, 993 P.2d at 1129, it is immaterial whether the accident was major or minor – the "gist" of her statement was that Bill Luke was not forthright regarding the vehicle's history.  Any damage to Bill Luke's reputation stems from the fact that Alexander requested a vehicle with no accident history and received a vehicle that had been in a collision. Accordingly, "the sting of the two versions is not substantially different," and Alexander's statement "gave a substantially true account" of the Pacifica's damage history and an accurate reflection of her transaction with Bill Luke.  *Read*, 169 Ariz. at 355-56, 819 P.2d at 941-42.

---

[5]      We reject Alexander's alternative argument that her statement that the Pacifica had suffered "major" damage reflected her opinion and is not susceptible of being proven false.  *See Yetman v. English*, 168 Ariz. 71, 76, 811 P.2d 323, 328 (1991) (holding that a statement of opinion is protected only if: (1) it could not reasonably be interpreted as stating actual fact; or (2) it is not provable as false).  Although what one considers "major" damage certainly might vary from person to person, Alexander's statement could reasonably be interpreted as a factual assertion that the Pacifica had sustained a certain level of damage in the prior collision. *Burns*, 196 Ariz. at 165, ¶ 39, 993 P.2d at 1129 (stating that generally the jury determines whether an ordinary listener would believe a statement to be a factual assertion or mere opinion).

[6]      Bill Luke also states that photographs of the Pacifica taken after the accident and prior to the repair establish the falsity of Alexander's statement, but does not provide a citation to the record.  Although the record contains photographs of the Pacifica, there is no foundation to establish that they were taken after the accident and prior to the repair. Further, because Bill Luke did not provide a record citation, it is not clear whether those are the photographs on which it intended to rely.

**B.      Statement Two: "I requested the CarFax several times and each time was told the same thing[,] 'the car was "certified" and cannot receive that status if there had been any damage or issues.'"**

**¶15**      Alexander testified that she repeatedly asked Bill Luke employees for the CarFax report before and even after she purchased the vehicle and was told that the vehicle would not have received the dealership's certification if it had any issues or had been in an accident. Bill Luke offered no contrary evidence. Accordingly, it did not carry its burden to show with convincing clarity that there is a triable issue of fact concerning whether this statement was false. *Read*, 169 Ariz. at 356, 819 P.2d at 942.

**C.      Statement Three: "I also believe the initial salesman was aware of the damage and deliberately gave me the runaround about the information I requested."**

**¶16**      As discussed, to be defamatory, a statement must be one of fact, not opinion. *Burns*, 196 Ariz. at 165, ¶ 39, 993 P.2d at 1129. Alexander's statement concerns her belief that Bill Luke's salesperson was not forthright and evaded her requests for the CarFax report. Because the statement constitutes an expression of opinion, it does not support Bill Luke's defamation claim. *Id.* Further, even if Alexander's statement could reasonably be interpreted as a factual assertion regarding the salesperson's knowledge and truthfulness, Bill Luke did not offer any evidence that it was false (i.e., that the salesperson did not know about the prior damage and was not evasive). Accordingly, it did not carry its burden to show with convincing clarity that there is a triable issue of fact concerning whether this statement was false. *Read*, 169 Ariz. at 356, 819 P.2d at 942.

**D.      Statement Four: "I believe that I was purposely misinformed in order for the sale to happen."**

**¶17**      Again, this statement concerns Alexander's belief about the knowledge and motives of Bill Luke and its employees and therefore constitutes a non-actionable expression of opinion. *Burns*, 196 Ariz. at 165, ¶ 39, 993 P.2d at 1129. To the extent it could be construed as a factual assertion, Bill Luke did not offer any contrary evidence to show that the statement was false. *Read*, 169 Ariz. at 356, 819 P.2d at 942.

## CONCLUSION

¶**18** Because we resolve this appeal on the basis that the statements are not defamatory, we need not address the issue of qualified privilege. The court's grant of summary judgment is affirmed.



**Ruth A. Willingham · Clerk of the Court**
F I L E D : gsh