360 P.3d 142

**PINAL COUNTY, a government entity; Fritz Behring, Petitioners,**

v.

**The Honorable Katherine COOPER, Judge of the Superior Court of the State of Arizona, in and for the COUNTY OF MARICOPA, Respondent Judge,**

**Timothy Gaffney, Real Party in Interest.**

**No. 1 CA–SA 15–0171.**

Court of Appeals of Arizona, Division 1.

Oct. 20, 2015.

 

Jones, Skelton & Hochuli, P.L.C., By Georgia A. Staton, Jonathan P. Barnes, Jr., Phoenix, Counsel for Petitioners.

Catanese Law Firm, P.C., By David J. Catanese, Phoenix, Counsel for Real Party in Interest.

Judge PETER B. SWANN delivered the opinion of the court, in which Presiding Judge ANDREW W. GOULD and Judge SAMUEL A. THUMMA joined.

## OPINION

SWANN, Judge:

¶ 1 The issue in this case is whether evidence that a government official acted with ill will is sufficient to defeat qualified immunity. Because qualified immunity is a complete defense to a tort action absent a showing of objective malice, we hold that evidence of spite or ill will is not sufficient to prevent summary judgment on immunity grounds.

## FACTS AND PROCEDURAL HISTORY

¶ 2 Timothy Gaffney, Director of Communications for the Pinal County Sheriff's Office, brought an action against Fritz Behring and Pinal County based on Behring's actions as Pinal County Manager. Asserting claims for defamation, negligence, intentional infliction of emotional distress, negligent infliction of emotional distress, and abuse of process, Gaffney alleged that Behring deliberately attempted to injure him by (1) applying an inappropriate tax rate for his use of a government vehicle; (2) initiating groundless investigations related to Gaffney's deletion of government e-mails and his submission of a questionable travel-reimbursement form; and (3) disseminating false information about him and the investigations. Though not alleged in the complaint, the action also came to involve Behring's initiation of an investigation into a grant application on which the Sheriff's Office had used Behring's electronic signature without his authorization.

¶ 3 Behring and Pinal County moved for summary judgment, arguing, *inter alia,* that Behring was protected from liability by qualified immunity because his conduct was with-

in the scope of his official duties and he did not act with malice.

¶ 4 With respect to the vehicle-tax issue, the undisputed facts revealed that Gaffney's wages had been garnished at an inappropriate rate. It was also undisputed that Behring had requested an IRS audit to clarify the correct rate. Further, there was no dispute that the County had received conflicting opinions from two different tax attorneys before the IRS resolved the issue.

¶ 5 With respect to the e-mail-deletion investigation, the parties did not dispute that Gaffney had deleted official e-mails after receiving public records requests; nor did they dispute that a County policy required preservation of all emails. With respect to the travel-reimbursement investigation, the parties did not dispute that Gaffney had submitted a travel-reimbursement form with a return date that was called into question by his own cell phone records. With respect to the grant-application investigation, it was undisputed that a Sheriff's Office employee had used Behring's electronic signature without his permission. The defendants provided undisputed evidence in the form of letters showing that Behring had asked the County Attorney to investigate the matter, and that the County Attorney referred the matter to the Department of Public Safety. Neither of the letters made any mention of Gaffney, though the officer who investigated the matter spoke to Behring and apparently believed that Gaffney was the party who had misused Behring's signature.

¶ 6 The parties also did not dispute that Behring had published to the Sheriff and the Deputy Sheriff the following statements about Gaffney: "Why do you have a felon working for you?" and "He's hidden email. He's deleted email. He's made a false claim on a travel invoice." Gaffney further alleged that Behring had told the Sheriff that Gaffney was a "minion," "spear thrower," "operative who drops bombs on people," and a "felon," and had told the Deputy Sheriff that Gaffney was "crazy," "out of control," and a "felon." Gaffney alleged that Behring and the County Board of Supervisors had an antagonistic relationship with the Sheriff's Office, and that Behring had told the Sheriff

on more than one occasion that the conflict could be resolved if Gaffney were fired. Gaffney also alleged that Behring had repeatedly told the Deputy Sheriff that Gaffney needed to be controlled and fired. Finally, Gaffney alleged that Behring had used the vehicle tax and the investigations to attack Gaffney both directly and in the media.

¶ 7 The superior court denied the motion for summary judgment (except with respect to the claims for negligent infliction of emotional distress and abuse of process, which Gaffney agreed to dismiss). The court concluded that· there was a genuine dispute of material fact regarding whether Behring had forfeited his qualified immunity, because "[a] jury could reasonably conclude that Behring acted with malice based on the cumulative nature of the events, Behring's alleged reference to Plaintiff as a felon, and statements suggesting Plaintiff concealed information by dumping his email." The court further held that Behring's statements were not privileged for purposes of the defamation claim, and that there was sufficient evidence to allow a jury to find negligence and intentional infliction of emotional distress.

¶ 8 Behring and Pinal County seek relief by special action.

## JURISDICTION

¶ 9 We accept jurisdiction over this special action because a party who claims immunity from suit loses the benefit of the immunity if he is forced to stand trial, and therefore has no adequate remedy by direct appeal. *Mashni v. Foster*, 234 Ariz. 522, 526, ¶ 14, 323 P.3d 1173 (App.2014); *see* Ariz. R.P. Spec. Act. 1(a).

## DISCUSSION

¶ 10 Qualified immunity protects executive government officials from liability when they undertake official acts that require the exercise of judgment or discretion. *Chamberlain v. Mathis*, 151 Ariz. 551, 554–55, 729 P.2d 905 (1986). The protection is predicated on the official's objective good faith. *Id.* at 554, 729 P.2d 905; *Carroll v. Robinson*, 178 Ariz. 453, 456, 874 P.2d 1010 (App.1994). Qualified immunity is unavail-

able if the official "knew or should have known that he was acting in violation of established law or acted in reckless disregard of whether his activities would deprive another person of their rights." *Chamberlain*, 151 Ariz. at 558, 729 P.2d 905. The plaintiff must establish proof of such malice by an objective standard. *Id.* at 559, 729 P.2d 905. "Thus, in a defamation case, qualified immunity will protect a public official if the facts establish that a reasonable person, with the information available to the official, 'could have formed a reasonable belief that the defamatory statement in question was true and that the publication was an appropriate means for serving the interests which justified the privilege.' " *Id.* (citation omitted).[1]

¶ 11 Whether a defendant is entitled to immunity is a question of law, *Carroll*, 178 Ariz. at 456, 874 P.2d 1010, and the objective standard allows courts to dispose of many cases on summary judgment, *Goddard v. Fields*, 214 Ariz. 175, 179, ¶ 15, 150 P.3d 262 (App.2007). But when the existence of immunity depends on disputed factual issues, a jury must resolve those issues before the court may decide whether the facts are sufficient to establish immunity. *Chamberlain*, 151 Ariz. at 554, 729 P.2d 905; *see also Link v. Pima County*, 193 Ariz. 336, 341, ¶ 18 n. 5, 972 P.2d 669 (App.1998) (noting that court may use special interrogatories to aid expeditious resolution of the question of whether immunity applies).

¶ 12 The parties do not dispute that Behring was an executive government official, or that he had authority to enforce vehicle taxes and initiate good-faith investigations of employee malfeasance. They dispute, however, whether Behring's statements fell within the scope of his official duties. They also dispute whether the superior court erred by finding a genuine issue of fact with respect to whether Behring's actions were malicious.

¶ 13 We first address the issue of malice. In finding a question of fact on this issue, the superior court relied on the parties' acrimonious relationship. But while the nature of the relationship could support an inference that Behring acted with *subjective* malice, the relevant inquiry was whether he acted with *objective* malice. As a matter of logic and law, if the undisputed facts require the conclusion that Behring could reasonably have believed that his actions were premised on actual facts and colorable legal positions, then qualified immunity prevents the action from proceeding.

¶ 14 There is no genuine dispute of material fact regarding this question. First, it is undisputed that there was an objective basis for commencing an investigation into the grant application. Further, there was no evidence that Behring ever directed that Gaffney be a subject of the investigation. And because Gaffney was undisputedly perceived as "the voice and face of the sheriff's department," his inclusion in the investigation was objectively reasonable even assuming that he was not directly involved in the culpable employee's misconduct.

¶ 15 Second, the evidence established objectively reasonable bases for the actions that Behring did direct toward Gaffney: the County had received conflicting legal opinions regarding the correct vehicle-tax rate, and it was undisputed that Gaffney had deleted official e-mails contrary to County policy and that his cell phone records called into question the accuracy of his travel-reimbursement form. Contrary to Gaffney's suggestion, it is immaterial that

---

1. The objective malice standard that applies to a defense of qualified immunity differs from the constitutional "actual malice" standard in defamation actions against non-official actors. Under the objective malice standard, immunity is preserved if the actor "could have formed a reasonable belief" in the truth of the statement. *Chamberlain*, 151 Ariz. at 559, 729 P.2d 905. Under the "actual malice" standard, the speaker must actually have subjectively known of or recklessly disregarded the falsity of a statement. *New York Times v. Sullivan*, 376 U.S. 254, 279–86, 84 S.Ct. 710, 11 L.Ed.2d 686 (1964). In Arizona, that constitutional standard has been strengthened to require "*conscious* disregard" of the truth. *Dombey v. Phoenix Newspapers, Inc.*, 150 Ariz. 476, 487, 724 P.2d 562 (1986). Both standards differ from common law malice, which requires a showing of ill will, spite or hatred, and forms neither a part of the constitutional actual malice test nor the objective malice test. *See Rosenbloom v. Metromedia, Inc.*, 403 U.S. 29, 52 n. 18, 91 S.Ct. 1811, 29 L.Ed.2d 296 (1971) ("[I]ll will toward the plaintiff, or bad motives, are not elements of the New York Times standard.").

the tax-rate question was ultimately resolved in his favor[2] and that the investigations did not result in criminal charges. At the time Behring took the actions in question, he had reasonable grounds to do so. He therefore was entitled to qualified immunity with respect to those actions.

¶ 16 We next address the statements that Behring made about Gaffney. We need not decide whether the statements fell within the scope of Behring's official duties because they were not actionable as a matter of law.

 ¶ 17 Gaffney is a public official. A defendant is subject to liability for defamation of a public official only if he, with actual malice, publishes to a third party a false and defamatory communication concerning the plaintiff. *Peagler v. Phoenix Newspapers, Inc.*, 114 Ariz. 309, 315, 560 P.2d 1216 (1977); *Dombey v. Phoenix Newspapers, Inc.*, 150 Ariz. 476, 486, 724 P.2d 562 (1986); *Dube v. Likins*, 216 Ariz. 406, 417, ¶ 36, 167 P.3d 93 (App.2007). "To be defamatory, a publication must be false and must bring the defamed person into disrepute, contempt, or ridicule, or must impeach plaintiff's honesty, integrity, virtue, or reputation." *Turner v. Devlin*, 174 Ariz. 201, 203–04, 848 P.2d 286 (1993) (citation omitted). A substantially true communication is not actionable. *Read v. Phoenix Newspapers, Inc.*, 169 Ariz. 353, 355, 819 P.2d 939 (1991). Further, a communication is not actionable if it is comprised of "loose, figurative, or hyperbolic language" that cannot reasonably be interpreted as stating or implying facts "susceptible of being proved true or false." *Milkovich v. Lorain Journal Co.*, 497 U.S. 1, 21, 110 S.Ct. 2695, 111 L.Ed.2d 1 (1990). The crucial inquiry is whether the finder of fact could employ objective criteria to determine the statement's truth or falsity. *Id.* at 22, 110 S.Ct. 2695; *Turner*, 174 Ariz. at 207, 848 P.2d 286. This limitation "provides assurance that public debate will not suffer for lack of 'imaginative expression' or the 'rhe-

torical hyperbole' which has traditionally added much to the discourse of our Nation." *Milkovich*, 497 U.S. at 19, 110 S.Ct. 2695. "[V]igorous epithet[s]," *Greenbelt Coop. Publ'g Ass'n v. Bresler*, 398 U.S. 6, 14, 90 S.Ct. 1537, 26 L.Ed.2d 6 (1970), personal characterizations of manner, *Turner*, 174 Ariz. at 207–08, 848 P.2d 286, and "rhetorical political invective [or] opinion," *Burns v. Davis*, 196 Ariz. 155, 165, ¶ 39, 993 P.2d 1119 (App.1999), therefore are not actionable.

 ¶ 18 Behring's disparaging characterizations of Gaffney as a "minion," "spear thrower," "operative who drops bombs on people," and a "crazy" person who was "out of control" did not assert or imply statements of fact capable of being proved true or false. These statements could not reasonably be construed as anything more than hyperbolic invective. Similarly, Behring's statements that Gaffney should be controlled or fired were not susceptible to proof of objective falsity. On the other hand, the statements that Gaffney was a "felon," had "hidden.... [and] deleted email," and had "made a false claim on a travel invoice" were capable of being proved true or false.[3] The undisputed evidence showed that the statements were not made with actual malice. Gaffney admitted that he had deleted official e-mails after receiving public records requests, and admitted that destroying public records is a felony under Arizona law. Further, the agency that investigated the travel-reimbursement issue concluded that while criminal charges ultimately were not warranted, Gaffney's conduct raised "clear concerns." Accordingly, none of the statements provided grounds for a defamation claim sufficient to survive summary judgment.

## CONCLUSION

¶ 19 For the foregoing reasons, we accept jurisdiction and grant relief. The defendants

---

**2.** Gaffney's deposition testimony established that he was refunded the amount of taxes improperly withheld.

**3.** It merits note that there is no allegation that Behring represented that Gaffney had been *convicted* of a felony. Such a statement would have

been provably false, and there is no evidence suggesting a good-faith basis for a belief in its truth. But the use of the term "felon" by itself implies merely Behring's belief that Gaffney had committed a felonious act.

are entitled to summary judgment on all issues addressed by this opinion.