NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

---

AUGUST JEREMY HOENACK,
*Plaintiff/Appellant*,

*v.*

GANNETT CO., INC., et al.,
*Defendants/Appellees*.

No. 1 CA-CV 23-0020
FILED 11-16-2023

---

Appeal from the Superior Court in Maricopa County
No. CV2022-003864
The Honorable John R. Hannah, Judge

**AFFIRMED**

---

COUNSEL

August Jeremy Hoenack, Goodyear
*Plaintiff/Appellant*

Ballard Spahr, Phoenix
By David J. Bodney, Matthew E. Kelley, Kennison C. Lay
*Counsel for Defendants/Appellees*

---

**MEMORANDUM DECISION**

Judge Samuel A. Thumma delivered the decision of the Court, in which Presiding Judge D. Steven Williams and Judge Paul J. McMurdie joined.

---

**T H U M M A**, Judge:

¶1　　　　Plaintiff August Jeremy Hoenack appeals from an order granting a motion to dismiss for failure to state a claim filed by defendants Gannett Co., Inc., Phoenix Newspapers, Inc. and Taylor Seely (collectively PNI). Hoenack also challenges an order denying his motions for leave to amend and to reconsider. Because plaintiff has shown no error, the orders are affirmed.

**FACTS AND PROCEDURAL HISTORY**

¶2　　　　This case arises out of plaintiff's time on the Governing Board (Board) for the Litchfield Elementary School District (District). As Hoenack alleges in his complaint, "almost immediately" after joining the Board in 2021, he "became embroiled in a national controversy" after learning the District was "secretly and illegally implementing Critical Race Theory," including through a Transformational Equity Work procedure manual and Equity Statement.

¶3　　　　PNI published a series of articles on the situation. The articles included statements by Hoenack, other Board members and parents of children who attended the school. The articles also discussed how former Board member Dr. Tara Armstead obtained an injunction against harassment against Hoenack that was dismissed in June 2021.

¶4　　　　In March 2022, Hoenack sued, alleging defamation and false light invasion of privacy arising from PNI's articles.[1] PNI moved to dismiss, alleging Hoenack failed to state a claim upon which relief could be granted. After full briefing, the court granted the motion and dismissed Hoenack's complaint. More than a month later, Hoenack moved to reconsider the dismissal order or, in the alternative, to grant him leave to file an amended

---

[1] He also asserted an intentional infliction of emotional distress claim, which the superior court dismissed and that Hoenack, on appeal, has withdrawn.

complaint. PNI opposed the motion for leave, arguing futility. The court denied the motion to reconsider and the motion for leave.

**¶5**         After entry of final judgment, Hoenack timely appealed.[2] This court has jurisdiction under Article 6, Section 9, of the Arizona Constitution and Arizona Revised Statutes (A.R.S.) sections 12-120.21(A)(1) and -2101(A)(1)(2023).[3]

## DISCUSSION

**¶6**         Hoenack's opening brief does not comply with applicable court rules. Among other things, an opening brief must include "appropriate references to the record," ARCAP 13(a)(4), and citations to legal authority, *see Lake Havasu City v. Ariz. Dep't of Health Servs.*, 202 Ariz. 549, 553 ¶ 15 n.4 (App. 2002). Hoenack's opening brief fails to do either, resulting in waiver. *See, e.g.*, *MacMillan v. Schwartz*, 226 Ariz. 584, 591 ¶ 33 (App. 2011) ("Merely mentioning an argument in an appellate opening brief is insufficient."); *Delmastro & Eells v. Taco Bell Corp.*, 228 Ariz. 134, 137 ¶ 7 n.2 (App. 2011) (noting failure to cite the record adequately is "an appropriate ground for this court to find an appellant's argument waived"); *Ace Auto. Prod., Inc. v. Van Duyne*, 156 Ariz. 140, 143 (App. 1987) ("It is not incumbent upon the court to develop an argument for a party."). Furthermore, "arguments raised for the first time on appeal are untimely and deemed waived," *Odom v. Farmers Ins. Co. of Ariz.*, 216 Ariz. 530, 535 ¶ 18 (App. 2007), and the failure to raise an issue on appeal constitutes waiver, *see Lunney v. State*, 244 Ariz. 170, 174 ¶ 3 n.3 (App. 2017).

**¶7**         Waiver aside, Hoenack argues that the superior court was biased against him and that the court erred in (1) granting PNI's motion to dismiss his claims for defamation and false light invasion of privacy, (2) denying his motion for leave to amend his complaint and (3) denying his motion to reconsider. The court addresses his arguments in turn.

---

[2] Following entry of the judgment, Hoenack moved to alter or amend the judgment, which he then sought to withdraw, and the court denied as moot. Because Hoenack does not seek to challenge that ruling, it is not part of this appeal.

[3] Absent material revision after the relevant dates, statutes and rules cited refer to the current version unless otherwise indicated.

## I.      Hoenack Has Shown No Bias by the Superior Court.

**¶8**          Citing and quoting excerpts from *People v. Freeman*, 222 P.3d 177 (Cal. 2010), a post-conviction relief decision by the California Supreme Court, Hoenack asserts that "[r]ather than consider the facts and claims presented in [p]laintiff's detailed factual pleadings, the superior court admits it followed [d]efendant's distortion of a small subset of facts in its pleadings to make the court's flawed rulings," adding that the superior court's "bias caused it to ignore the herd of obvious-fact elephants in the room to rule on [d]efendant's irrelevant obscure technicalities." *Freeman*, however, rejected a claim that "the circumstances" of that case caused a due process violation requiring disqualification. 222 P.3d at 185. Moreover, the fact that the judge ruled against Hoenack is not a basis on which a judicial bias claim can be asserted. *State v. Granados*, 235 Ariz. 321, 326 ¶ 14 (App. 2014) ("judicial rulings alone almost never constitute a valid basis for a bias or partiality motion") (citation omitted). On the record presented, Hoenack has offered no evidence to rebut the directive that a "judge is presumed to be free of bias and prejudice." *Cook v. Losnegard*, 228 Ariz. 202, 206 ¶ 22 (App. 2011). For these reasons, Hoenack's judicial bias claim fails.

## II.     The Superior Court Did Not Err by Granting the Motion to Dismiss.

**¶9**          To prevail on a motion to dismiss for failure to state a claim, the moving party must establish that the claimant would not be entitled to relief under any set of facts susceptible of proof. *Fidelity Sec. Life Ins. Co. v. State,* 191 Ariz. 222, 224 ¶ 4 (1998). In reviewing the grant of a motion to dismiss for failure to state a claim, this court assumes the truth of all well-pleaded facts alleged in the complaint. *Id.* This court reviews de novo an order dismissing a complaint for failure to state a claim. *Coleman v. City of Mesa,* 230 Ariz. 352, 355 ¶ 7 (2012).

### A.      False Light Invasion of Privacy.

**¶10**          Hoenack asserted a false light invasion of privacy based on the following headline: "Hoenack requests to bring conceal carry gun."  On appeal, Hoenack states that his request ("I am formally requesting permission to conceal carry a weapon on [District] property and its buildings") (1) "had nothing to do with the performance of his duties" as a Board member and (2) "was not 'to bring a gun to a school board meeting[].'" Hoenack contends that the superior court erred by dismissing his false light claim.

4

¶11        "[A] plaintiff cannot sue for false light invasion of privacy if he or she is a public official and the publication relates to performance of his or her public life or duties." *Godbehere v. Phx. Newspapers*, 162 Arz. 335, 343 (1989). No matter if he was requesting to conceal carry on District property to attend a Board meeting or for other purposes, the reporting of Hoenack's request related to his duties as a Board member. Moreover, Hoenack failed to allege he was on District property other than for Board meetings.[4]

¶12        Hoenack's complaint asserted that "[a]t least five percent of the Arizona general population have [concealed carry weapon] permits," negating the thought that the fact of PNI publishing his request would be "highly offensive to a reasonable person." *Id.* at 338 (citation omitted). On appeal, Hoenack also argues PNI published his "personal and confidential safety and security information," adding: "[i]t is not only highly offensive, it is outrageous, that plaintiff can't even leave his weapon in his vehicle and park off school property because defendants maliciously told the world including criminals who would love to steal a weapon that they could find one in defendant's care when he is in a [B]oard meeting." But PNI did not publish a statement revealing details about Hoenack's carrying a concealed weapon. Instead, PNI published his *request* to carry a concealed weapon. On this record, Hoenack has not shown that his request for "permission to conceal carry a weapon on [District] property and its buildings" placed him in a false light. *See id.* at 344 (noting plaintiffs were public officials; "[t]he publications at issue concern the discharge of their public duties and do not relate to private affairs. Therefore, plaintiffs have no claim for false light invasion of privacy.").

### B.    Defamation.

¶13        For his defamation claim, as a public official, Hoenack needed to plead and be able to prove PNI, "with actual malice, publishe[d] to a third party a false and defamatory communication concerning the plaintiff." *Pinal Cnty. v. Cooper*, 238 Ariz. 346, 351 ¶ 17 (App. 2015). Actual malice requires a showing, by clear and convincing evidence, that the defendant published the defamatory statement knowing it was false or with "conscious disregard" that it was false. *Dombey v. Phx. Newspapers, Inc.*, 150

---

[4] Nor does Hoenack's vague assertion that "Hart v. Seven Resorts validates [p]laintiffs' claim for false light" change the result. *Hart v. Seven Resorts Inc.* refused to "infer publicity" in affirming summary judgment against plaintiffs on a false light invasion of privacy claim. 190 Ariz. 272, 281 (App. 1997).

Ariz. 476, 487 (1986). "To be defamatory, a publication must be false and must bring the defamed person into disrepute, contempt, or ridicule, or must impeach plaintiff's honesty, integrity, virtue, or reputation." *Reynolds v. Reynolds*, 213 Ariz. 313, 317 ¶ 8 (App. 2013) (citation omitted). And "to establish a defamation claim on matters of public concern: (1) the assertion must be provable as false; [and] (2) the statement must be reasonably perceived as stating actual facts about an individual, rather than imaginative expression or rhetorical hyperbole." *Rogers v. Mroz*, 252 Ariz. 335, 341 ¶ 22 (2022) (citation omitted). "Because the threat or actual imposition of pecuniary liability for alleged defamation may impair the unfettered exercise of these First Amendment freedoms, the Constitution imposes stringent limitations upon the permissible scope of such liability." *Id.* at 338 ¶ 4 (citation omitted).

¶14            "A substantially true communication is not actionable. Further, a communication is not actionable if it is comprised of 'loose, figurative, or hyperbolic language' that cannot reasonably be interpreted as stating or implying facts 'susceptible of being proved true or false.'" *Pinal Cnty.*, 238 Ariz. at 351 ¶ 17 (App. 2015) (citations omitted). "The First Amendment does not permit us to indulge the plaintiff's 'intensely subjective evaluation' of the meaning and falsity of a statement." *Rogers*, 252 Ariz. at 342 ¶ 30 (citation omitted). Similarly, "[a] mere implication derived from a concededly factual statement is a significant step removed from a statement that is expressly defamatory, requiring us to ensure that the implication is clear and fully capable of being proved false." *Id.*

¶15            The court applies these legal standards to the various publications Hoenack claims were defamatory.

### 1.    March 29, 2021 Article.

¶16            Hoenack alleged the following statement in this article was defamatory: "In February, he started emailing parents to share the news. His messages were provocative. They also were sometimes verifiably false." Hoenack argues his emails were "accurate, true and correct." But one of his emails states that the Board "adopted a Critical Race Theory manifesto . . . surreptitiously to hide it from the public." In the complaint, however, Hoenack alleges that this "manifesto" was an equity statement the Board adopted at a public meeting.

¶17            On appeal, Hoenack argues that "[t]he [B]oard acting at a public meeting is irrelevant" because in not reading the entire document out loud, the Board "deliberately concealed any reference" to the "rhetoric"

of a named individual on which he claims the manifesto was based. Hoenack cites no authority suggesting that the Board had to read the entire document out loud, let alone that such inaction meant PNI's March 29, 2021 article was inaccurate. "When the underlying facts are undisputed, the determination of substantial truth is a matter for the court." *Read v. Phx. Newspapers, Inc.*, 169 Ariz. 353, 355 (1991) (citation omitted). The superior court did not err in finding that PNI's published statement was substantially true. Nor does the record reflect that Hoenack's assertion that a District Committee "has unlimited power to invent new forms of racism, and change the curriculum, forever" was accurate. Hoenack has cited to no well-pleaded facts to show the published statement was false or made with actual malice. Thus, the superior court properly concluded this statement in the March 29, 2021 article was not actionable.

¶18 Hoenack argues the following additional statement in the March 29, 2021 article was defamatory: "Hoenack responded by accusing the three female [B]oard members of 'henpecking' him and 'rejected' their objections." Hoenack claims this statement is defamatory because it was published "to falsely insinuate" or imply "that [p]laintiff was a fool, who had no legitimate response, and could only respond with a misogynist insult." But, again, Hoenack's complaint concedes he told the Board: "You can sit in here and henpeck me to death, but I will read and I will explain it to you if you sit back." The March 29, 2021 article did not state that Hoenack was a fool, and he cannot show defamation by implication here. *See Rogers*, 252 Ariz. at 342 ¶ 30 (for defamation by implication, a plaintiff must show that "the implication is clear and fully capable of being proved false."). Whether PNI sought to "insinuate that [p]laintiff was a fool" or not, their motive does not change the fact that the published statement reporting what Hoenack said is accurate. This allegation thus does not support a defamation claim, and the superior court properly dismissed Hoenack's allegations about the March 29, 2021 article.[5]

## 2. May 21, 2021 Article.

¶19 Hoenack alleged the following statement in this article was defamatory: "Board member Jeremy Hoenack's behavior led the [B]oard's only Black member [Dr. Tara Armstead] to obtain a court injunction for harassment against him this week." Hoenack argues that "[d]efendants

---

[5] Hoenack does not challenge on appeal the superior court's rejection of his claim based on an April 23, 2021 article. Hoenack also does not challenge on appeal the superior court's rejection of his claim from the May 21, 2021 article alleged in paragraphs 119 and 123 of his complaint.

knew that statement was false, because they conspired with Dr. Armstead to create the article."

**¶20**    Contrary to Hoenack's assertion, the statement was true. Dr. Armstead did obtain an injunction against harassment against Hoenack**.** A true statement cannot provide the basis for a defamation claim. *See, e.g.*, *Reynolds*, 213 Ariz. at 317 ¶ 8 ("To be defamatory, a publication must be false. . ."). Because the statement was true, the alleged conspiracy "to create the article" similarly cannot provide a basis for a defamation claim.

**¶21**    Hoenack alleged that "[d]efendants and Dr. Armstead readily conspired to falsely insinuate that [p]laintiff is a racist, a segregationist, a white supremacist, a false 'Whistle-blower', a crackpot who lies to parents and community members with wild conspiracy theories." Hoenack, however, did not purport to tie this allegation to a publication by PNI. *See, e.g.*, *Reynolds*, 213 Ariz. at 317 ¶ 8 (requiring, among other things, "a publication" for any defamation claim).

**¶22**    Hoenack also alleged that the May 21, 2021 article "falsely insinuated that all of the racism in the [D]istrict was due to [p]laintiff." Hoenack, however, does not point to any statement in the article that might reasonably be interpreted to support such an allegation. On appeal, Hoenack claims the article "implies that [p]laintiff was the epicenter of racism in the district at the time of the article because he is the only person named in the context of racism in the article." The article reports on multiple viewpoints from various individuals, adding that Hoenack "feels people are misinterpreting his and the program's intentions." To prevail on a defamation claim by implication, a plaintiff must show that "the implication is clear and fully capable of being proved false." *Rogers*, 252 Ariz. at 342 ¶ 30 (2022) (citation omitted).[6] Hoenack's complaint failed to meet that requirement.

---

[6] In challenging a statement attributed to a university research assistant, Hoenack argues, without citation to legal authority, that "[a]ccurately quoting nonsense is irrelevant for same reasons regarding" this same allegation. For the same reasons discussed in text, that challenge fails. Hoenack also does not challenge on appeal the superior court's rejection of his claim based on this same article in paragraphs 139 and 149 of his complaint.

### 3.      June 4, 2021 Article.

**¶23**          Hoenack alleged that PNI's June 4, 2021 article, titled "School board members across Arizona under fire for mask use, 'critical race theory' accusations," defamed him by stating: "Parents in Litchfield Park have divided into partisan factions over district diversity, equity and inclusion efforts after newly elected Jeremy Hoenack accused his fellow board members of secretly working to adopt critical race theory and 'brainwash' students. School leaders have denied adopting critical race theory and allegations of secrecy," and describing what "School leaders" clarified.  On appeal, Hoenack argues that this article is actionable for the same reasons he argues the articles listed above are defamatory. For the reasons set forth above, that argument fails. He adds "[t]his is actionable as part of the false implication of a series of PNI articles." But Hoenack fails to show how any such implication is actionable. *Id*.

### 4.      June 4 and June 5, 2021 Articles.

**¶24**          As noted above, a May 21, 2021 article stated: "Board member Jeremy Hoenack's behavior led the board's only Black member to obtain a court injunction for harassment against him this week."  Hoenack alleged that the injunction against harassment was dismissed on June 4, 2021, but that PNI did not mention that in a June 4, 2021 article and republished the May 21, 2021 article on June 5, 2021, stating, "Board Member Jeremey Hoenack's behavior led to the board's only Black member to recently obtain a court injunction for harassment against him."  Hoenack alleges PNI "changed 'this week' into 'recently,'" and that the injunction had been dismissed by that time. Hoenack further alleges the June 5, 2021 article repeated from the May 21, 2021 article: "The latest action, board member Tara Armstead's court injunction against Hoenack, came after she said he emailed district parents calling her 'a cop hater' and claiming she is only supported because of her race." He also points to similar language in a June 4 article update posted at 3:19 p.m.

**¶25**          Hoenack takes issue with the fact that the articles did not report on the injunction's June 4, 2021 dismissal until a June 14, 2021 article, and that "[t]he 'latest action'" on June 5, 2021 was "'*[t]he court dismisses the protective order listed above*' earlier on June 4." Hoenack, however, cites no authority suggesting that PNI had an affirmative duty to update a previously posted article or that an update must occur within a specified period of time. Additionally, the injunction's later dismissal does not change the fact that Dr. Armstead had obtained an injunction against Hoenack, meaning the statement was substantially true. *See Pinal Cnty.*, 238

Ariz. at 351 ¶ 17; *cf. Green Acres Tr. v. London*, 141 Ariz. 609, 618-19 (1984) (addressing reports about statements made in public proceedings).

### 5.     June 14, 2021 Article.

¶26        Hoenack alleged that PNI's June 14, 2021 article, titled "School boards question safety of in-person meetings as tensions rise. What does the law say?", defamed him by stating: "The uproar was spurred on after [B]oard member Jeremy Hoenack falsely accused the district of adopting 'critical race theory' in February."

¶27        Hoenack asserts that this statement was false because his accusation was true, meaning the sentence is defamatory. Hoenack argues that "[e]veryone with a brain knows that Conscious Discipline, Social Emotional Learning, Equity, Diversity-Inclusion-Equity, Implicit Bias and a dozen other names, are all encompassed in the legal definition" of critical race theory. But the record does not suggest such a consensus or, contrary to Hoenack's argument, a single "legal definition" of the phrase. A "statement on matters of public concern must be provable as false before there can be liability." *Turner v. Devlin*, 174 Ariz. 201, 204 (1993) (quoting *Milkovich v. Lorain J. Co.*, 497 U.S. 1, 19 (1990)). And opinions cannot support a defamation claim unless they "would reasonably appear to state or imply assertions of objective fact" as well as "the impression created by the words used as well as the general tenor of the expression, from the point of view of the reasonable person." *Yetman v. English*, 168 Ariz. 71, 76 (1991) (citation omitted). Here, because the published statement cannot be proved false, it cannot support a defamation claim.

### 6.     August 17, 2021 Article.

¶28        Hoenack alleged that PNI's August 17, 2021 article "maliciously published the false statement" that an August 13, 2021 letter from an Arizona Deputy Solicitor General "chides the district for not acting openly on such an important issue as 'how to educate children about discrimination and race.'" On appeal, Hoenack states that "[s]aying a court 'chided' a person convicted of breaking a law is a lie any[]way you put it." But Hoenack has not alleged or demonstrated that statement is "of and concerning" him. *See Reynolds*, 231 Ariz. at 317 ¶ 8 (App. 2013) (citing authority). Thus, it cannot provide a basis for his defamation claim.

### 7.     **August 25, 2021 Article.**

**¶29**     Hoenack alleges an August 25, 2021 article, titled "'I was met with hate': Phoenix area school board's only Black member resigns after feeling targeted," defamed him by stating: "The next month, Hoenack blamed the district's failures on Armstead in an email sent to select community members that focused heavily on her race." Hoenack argues that this sentence is defamatory: "A reasonable person can see that Armstead was a footnote to the 17 paragraph letter mostly blaming parents. The short Armstead paragraph begins with 'Some of you [parents] think Dr. Tara Armstead walks on water,' and. 'I . . . understand . . . why [the District] is where it is.' Both clearly blame parents, and not Armstead, who joined the board only the month before." His complaint, however, purports to include excerpts in this email in which he states Dr. Armstead "screamed at me, 'don't use my name.' over and over;" references "Armstead's unhinged interruption;" accuses her of lying and refers to "her skin color." This shows that the sentence reasonably and fairly characterized his statements. *See Read*, 169 Ariz. at 355. Nor has he alleged that the statements were published with actual malice. *Dombey*, 150 Ariz. at 480 (citing *New York Times Co. v. Sullivan*, 376 U.S. 254, 279-86 (1964)).

### 8.   **Hoenack's Purported Conspiracy Claim.**

**¶30**     Hoenack also alleged that PNI "helped" the District hide "highly newsworthy" information "by not publishing it." As the superior court noted, however, Hoenack alleged "[n]o well-pled facts in the complaint support the conclusory allegation that the defendants conspired or collaborated with" the District. Nor has he provided any authority supporting his novel claim that PNI had an enforceable, affirmative duty to publish the information. Finally, this alleged conspiracy to not publish information could not support a defamation claim, which requires the publication of a "defamatory communication concerning the plaintiff." *Pinal Cnty.*, 238 Ariz. at  351 ¶ 17.[7]

---

[7] To the extent that Hoenack may have sought to raise other issues in his opening brief, for the reasons set forth in paragraph 6 above, he has waived any such issues.

### III. The Superior Court Did Not Err by Denying Hoenack's Motion for Leave to Amend.

**¶31** Hoenack argues the superior court abused its discretion in denying his motion for leave to amend his complaint, noting amendments to pleadings should be liberally allowed in the interest of justice, and there has been no trial on the merits. Hoenack is correct in arguing that the denial of a motion to amend a pleading is reviewed for abuse of discretion. *MacCollum v. Perkinson*, 185 Ariz. 179, 185 (App. 1996). There is no abuse of discretion when a court properly concludes that the amendment would be futile. *Alosi v. Hewitt*, 229 Ariz. 449, 452 ¶ 13 (App. 2012).

**¶32** The superior court found that all of Hoenack's claims failed as a matter of law. Hoenack's proposed amended complaint does not remedy the defects in his original complaint or present new legal theories supporting a meritorious claim. Thus, Hoenack has not shown that the court abused its discretion in denying his motion for leave to amend. *See id.*

### IV. The Superior Court Did Not Err by Denying the Motion to Reconsider.

**¶33** The denial of a motion to reconsider is reviewed for an abuse of discretion. *See Tilley v. Delci*, 220 Ariz. 233, 238 ¶ 16 (App. 2009). Because, as described above, Hoenack has not shown the superior court erred in granting PNI's motion to dismiss, he has not shown the court abused its discretion in denying his motion to reconsider.

### CONCLUSION

**¶34** The judgment is affirmed.



AMY M. WOOD • Clerk of the Court
FILED: AA